No. 2843

Second Circuit

---

GREMILLION v. LEMOINE, ET AL.

---

(Jan. 28, 1927.  Opinion and Decree.)

(*Syllabus by the Editor.*)

---

1.  Louisiana Digest—Fraud—Par. 10.

Fraud and collusion between the buyer at a tax sale and the owner to defeat a mortgage creditor is not proven merely by a few circumstances which are outweighed by positive testimony to the contrary.

Appeal from the Twelfth Judicial District Court of Louisiana, Parish of Avoyelles.  Hon. S. Allen Bordelon, Judge ad hoc.

Action by Oge G. Gremillion against Victor Lemoine, et al.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

V. A. & Philo Coco, of Marksville, attorneys for plaintiff, appellant.

Joffrion & Joffrion, of Marksville, attorneys for defendants, appellees.

ODOM, J.    Plaintiff, as the holder and owner of a promissory note for $200.00, dated October 18, 1918, due November 1, 1919, bearing interest at the rate of eight per cent per annum from maturity until paid, and made and signed by Victor Lemoine, brought this suit to recover the amount thereof.

The note represents part of the purchase price of eleven acres of land in Avoyelles parish, Louisiana, and was secured by a vendor's lien on said land.

The land, which was purchased by Victor Lemoine and on which the mortgage rested, was sold at tax sale to A. H. Lemoine on August 5, 1922, for the unpaid taxes of 1921.

Plaintiff alleged that Victor Lemoine, the tax debtor, and A. H. Lemoine, the purchaser at tax sale, entered into a fraudulent collusion to permit said property to be sold and purchased by A. H. Lemoine in order to defeat his rights as mortgage creditor; that said tax sale was, therefore, null and void and of no effect, and he asked that the same be set aside and his vendor's lien on the property recognized and enforced.

Both Victor Lemoine and A. H. Lemoine were made parties defendant.  Victor Lemoine, the debtor, did not appear by answer or otherwise and judgment went against him by default for the amount of the note, interest, attorney's fees and costs.

A. H. Lemoine, the tax purchaser, answered the suit, denying that there was colusion or fraud between himself and Vic-

tor Lemoine, the tax debtor, and averred that the tax sale to him was good and valid and that he is now the owner of the land, free from any lien or incumbrance arising from the recordation of the act of mortgage, the period of redemptioln for the property having lapsed.

There was judgment in the district court for plaintiff and against Victor Lemoine, as above stated, but rejecting plaintiff's demand to have the tax sale declared a nullity; the judgment recognized the title of A. H. Lemoine to the land.

The plaintiff appealed.

### OPINION.

If, as alleged by plaintiff, Victor Lemoine, the tax debtor, and A. H. Lemoine, the tax purchaser, entered into an agreement to the effect that the tax debtor would not pay his taxes so that the property might be sold in order to defeat the rights of the mortgage creditor, the sale of the land should be set aside and the plaintiff's lien thereon recognized. Such conduct on the part of a tax debtor and a tax purchaser would not be tolerated by a court of justice. No citation of authority on this point is necessary.

But we do not find the facts to be as alleged by plaintiff. The most that can be said in plaintiff's favor is, that there are some suspicious circumstances attending the transaction. But plaintiff failed to make out his case with that degree of certainty which would warrant the court in convicting the defendants of fraud.

Victor Lemoine, the tax debtor, is a poor man financially; he is a farmer, and has a large family. The years 1920, 1921, 1922, and 1923, were bad years for farmers in that section. In addition to other calamities, the country was visited by an over-flow during that time. Victor Lemoine made practically nothing in the years 1920 and 1921. When his taxes for 1921 fell due he had no money with which to pay them. After his property was advertised for sale in 1922 for the taxes of 1921 amounting to $46.00, he went with a brother-in-law to a bank and tried to borrow the money with which to pay his taxes, but the loan was refused him. Seeing that he could not pay the taxes he seems to have abandoned all effort to save the property.

Due to the bad financial conditions which prevailed, a great deal of land in that section was allowed to sell for taxes at the same time.

A. H. Lemoine, who is a merchant at Plaucheville in that parish, and who purchased the land, says he happened to be in Marksville, the parish seat, the day the property was to be offered for sale for its taxes by the sheriff. He purchased this property for the amount of the taxes, about $46.00. His deed was recorded on August 29, 1922. He and Victor Lemoine both swear that the sale was not mentioned between them until some time after one year from the date of the recordation of the deed. In the meantime Victor Lemoine had moved off of the property.

The plaintiff lived in Alexandria, in an adjoining parish, and knew nothing of the tax sale until September 23, 1923, after the redemptive period had elapsed, although the notice of sale and prescribed notice to mortgage creditors had been published according to law. His lien on the property of course was divested by the sale.

Finding his rights thus divested he sought Victor Lemoine, his debtor. Lemoine, who says he found out from a third party after the year for redemption had

elapsed that his property had been sold, told plaintiff to see A. H. Lemoine who had purchased it.

The record is barren of any positive testimony showing collusion between the tax debtor and the tax purchaser. But plaintiff points to the following circumstances which he thinks, are sufficient to warrant the court in holding that there was fraud and collusion between the defendants. He says it is unreasonable to suppose that Victor Lemoine would have allowed his property, for which he paid or was to pay more than a thousand dollars, to be sold for its taxes and fail to redeem it after it was sold.

But his conduct in that respect is easily understood, because it is shown that he had no money and could borrow none. The overflow and other disasters had brought about a near-panic amongst the small farmers and the value of the property was almost destroyed. There was a mortgage indebtedness against it of $600.00, plus interest, and the testimony shows that it was not worth more than half that amount at the time of the tax sale. Victor Lemoine was insolvent. He could not hold the property as a homestead on account of the vendor's mortgage against it. It is easy, therefore, to understand, why he should lose interest in and abandon it as he did.

It is next pointed out that on September 26, 1923, after the tax sale had ripened into title in A. H. Lemoine, Victor Lemoine executed a confirmation of the sale by notarial act. The act recites that the redemptive period had passed and that there was no legal cause for setting the sale aside and he therefore abandoned and relinquished all claims to the land to and in favor of the purchaser.

He was then in debt unto A. H. Lemoine for a considerable sum, and it is suggested that it was probably agreed that this indebtedness should be cancelled as a consideration for the sale. But there is no proof of that. A. H. Lemoine says that he did not agree to cancel the debt. He told Judge Coco that the property had cost him about $1200.00, but he explains that what he meant was that Victor Lemoine owed him about that amount which he did not expect to collect because Victor was insolvent.

These and some other circumstances concerning the transaction may be sufficient to cause one to suspect that there might have been some understanding between the defendants that this method should be resorted to to defraud plaintiff of his rights; but they do not outweigh the positive testimony to the contrary.

Both Victor Lemoine and A. H. Lemoine swore positively that there was no understanding between them that the taxes should not be paid and that the property should be sold. The veracity of the two Lemoines is not challenged. A. H. Lemoine was forty-seven years old and is shown to be a prominent business man who had the confidence and respect of his neighbors as is evidenced by the fact that he was at the time a member of the Avoyelles Parish Highway Commission and president of the Drainage Board. He would hardly enter into such a collusion and ultimately prejure himself to shield a distant kinsman from his debts.

The judge ad hos before whom the case was tried was not convinced that there was collusion. Neither are we.

The judgment of the district court is correct and is therefore affirmed with costs.